## GENERAL ALLEGATIONS

1.     This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.     Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.     MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.



2

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

3



whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States. These consumers compose the putative class in this action and have rights that are substantially the same.

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of: (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

104

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action. There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product. Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

6

26.     As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.     Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.     Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.     Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.     Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.     Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper

7

106

warnings accurately and fully reflecting the scope and severity of symptoms of those side effects should have been made.

32.    Defendants' had notice and knowledge as early as February 20, 2007, that their Product presented substantial and unreasonable risks, and possible death, to animals consuming the Product. As such, said consumers' dogs and cats, including Plaintiff's dog, ABBY, were unreasonably subjected to the risk of illness or death from the consumption of Defendants' Product.

33.    Despite such knowledge, Defendants, through their officers, directors, partners and managing agents for the purpose of increasing sales and enhancing its profits, knowingly and deliberately failed to remedy the known defects of Defendants' Product in a timely manner, failed to conduct testing in a timely manner, and failed to warn the public in a timely manner, including Plaintiff, of the serious risk of illness and death occasioned by the defects inherent in Defendants' Product.

34.    Defendants and their officers, agents, partners and managers intentionally proceeded with the manufacturing, distribution, sale and marketing of Defendants' Product, knowing that the dogs and cats ingesting the Defendants' Product would be exposed to serious potential danger, in order to advance their own pecuniary interests.

35.    Defendants' conduct was wanton and willful, and displayed a conscious disregard for the safety of the Product and particularly of the damage it would cause pet owners like the SIMS, entitling these Plaintiffs to exemplary damages.

36.    Defendants acted with conscious and wanton disregard of the health and safety of Plaintiff's dog, ABBY, and Plaintiff requests an award of additional damages for the sake of example and for the purpose of punishing such entities for their conduct,

8

in an amount sufficiently large to be an example to others, and to deter Defendants and others from engaging in similar conduct in the future. The above-described wrongful conduct was done with knowledge, authorization, and ratification of officers, directors, partners and managing agents of Defendants.

37.    As a direct and proximate result of Defendants' negligence as described herein, Plaintiff SIMS sustained damages in the loss of their family pet.

## AS AND FOR A FIRST CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY - FAILURE TO WARN

38.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

39.    Defendants manufactured, marketed, distributed, and supplied Defendants' Product to distribution centers throughout the United States. As such, Defendants had a duty to warn the public, including Plaintiff, of the health risks and possible death associated with using Defendants' Product.

40.    Defendants' Product was under the exclusive control of Defendants, and was sold without adequate warnings regarding the risk of serious injury and other risks associated with its use.

41.    As a direct and proximate result of the defective condition of Defendants' Product as manufactured and/or supplied by Defendants, and as a direct and proximate result of negligence, gross negligence, willful and wanton misconduct, or other wrongdoing and actions of Defendants described herein, Plaintiff suffered damages.

42.    Upon information and belief, Defendants knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of animal health and safety, in knowing,

9



conscious, and deliberate disregard of the foreseeable harm caused by Defendants' Product and in violation of their duty to provide an accurate, adequate, and complete warning concerning the use of Defendants' Product.

43.    Defendants failed to warn the public or Plaintiff in a timely manner of the dangerous propensities of Defendants' Product, which dangers were known or should have been known to Defendants, as they were scientifically readily available.

44.    Defendants knew and intended that Defendants' Product would be distributed through the United States without any inspection for defects.

45.    Defendants also knew that veterinary clinics, pet food stores, food chains and users such as Plaintiff would rely upon the representations and warranties made by Defendants on the product labels and in other promotional and sales materials upon which the Plaintiff did so rely.

46.    As a direct and proximate result of the Defendants' distribution of the product without adequate warnings regarding the health risks to animals, the Plaintiffs suffered damage as previously alleged herein, including ascertainable economic loss, including the purchase price of Defendants' Product, out-of-pocket costs of veterinary medical tests and treatment for their dog, ABBY, out-of-pocket costs of disposal/burial fees after the death of their dog, ABBY, as well as the pecuniary value.

47.    Defendants' conduct in the packaging, warning, marketing, advertising, promotion, distribution, and sale of Defendants' pet foods, was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiffs' pets, thereby entitling Plaintiffs to punitive damages in an amount to be

determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

48. The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SECOND CAUSE OF ACTION SOUNDING IN STRICT PRODUCT LIABILITY – DEFECTIVE IN DESIGN OR MANUFACTURE

49. Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

50. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants' Product, which was defective and unreasonably dangerous to the Plaintiffs' pets.

51. Defendants' Product was sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and was expected to reach and did reach consumers without substantial change in the condition in which it was manufactured and sold by Defendants.

52. The Product was manufactured, supplied, and/or sold by Defendants and was defective in design or formulation in that when it left the hands of the manufacturers and/or sellers it was unreasonably dangerous in that its foreseeable risks exceeded the benefits associated with the designs and/or formulations of the Product.

53. Upon information and belief, Defendants actually knew of the defective nature of Defendants' Product but continued to design, manufacture, market, and sell it so as to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' Product.

11

54.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendants in a defective and unreasonably dangerous condition in ways which include, but are not limited to, one or more of the following:

        a.    When placed in the stream of commerce, the Product contained unreasonably dangerous design defects and was not reasonably safe and fit for its intended or reasonably foreseeable purpose or as intended to be used, thereby subjecting the dogs and cats of the consumers, including Plaintiff, to risks which exceeded the benefits of the Product;

        b.    The Product was insufficiently tested;

        c.    The Product caused serious illness, harmful side effects, and possible death that outweighed any potential utility;

        d.    In light of the potential and actual risk of harm associated with ingestion of the Product by dogs and cats, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that the Product should not have been marketed, distributed or sold in that condition.

55.    At all times material to this action, the Product was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed, it was

expected to reach, and did reach, purchasers of the Product across the United States, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was sold.

56.    At all times, Plaintiff purchased the Product for its intended or reasonably foreseeable purpose.

57.    As a direct, legal proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff sustained damage, for which Plaintiff is entitled to recovery.

58.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, was injured in health, strength and activity and subsequently died after having suffered physical injuries.

59.    As a direct, legal, proximate and producing result of the defective and unreasonably dangerous condition of the Product, Plaintiff's dog, ABBY, required reasonable and necessary veterinary treatment and services and incurred expenses for which Plaintiff is entitled to damages, along with the expenses of disposal/burial of the family pet.

60.    As a direct and proximate result of the design and manufacturing defects of Defendants' Product, Plaintiff suffered damages as previously alleged herein.

61.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, including Defendants' knowingly withholding and/or misrepresenting information to the public, including Plaintiff, which information was material and relevant

13

to the harm in question, punitive damages in an amount to be determined at trial that are appropriate to punish Defendants and deter them from similar conduct in the future.

62.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A THIRD CAUSE OF ACTION, SOUNDING IN FRAUD

63.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

64.    At all material times, Defendants were engaged in the business of manufacturing, marketing, distributing, promoting, and selling Defendants' Product.

65.    Defendants made misrepresentations of material facts to, and omitted and/or concealed material facts from, Plaintiff in the advertising, marketing, distribution and sale of Defendants' Product regarding its safety and use.

66.    Defendants deliberately and intentionally misrepresented to, and omitted and/or concealed material facts from, consumers, including Plaintiff SIMS, that Defendants' Product was safe when ingested by dogs and cats.  Such misrepresentations, omissions, and concealments of facts include, but are not limited to:

a.    Failing to disclose, and/or intentionally concealing, the results of tests showing the potential health risks to dogs and cats associated with the use of Defendants' Product;

b.    Failing to include adequate warnings with Defendants' Product about the potential and actual risks and the nature, scope, severity, and duration of serious adverse effects of Defendants' Product;

14



c. Concealing information regarding the known health risks to dogs and cats associated with Defendants' Product; and;

d. Concealing the known incidents of illnesses and death of dogs and cats, as previously alleged herein.

67. Defendants intentionally concealed facts known to them, as alleged herein, in order to ensure increased sales of Defendants' Product.

68. Defendants had a duty to disclose the foregoing risks and failed to do so, despite possession of information concerning those risks. Defendants' representations that Defendants' Product was safe for its intended purpose were false, as Defendants' Product was, in fact, dangerous to the health of and ultimately fatal to Plaintiff SIMS' dog, ABBY.

69. Defendants knew that their statements were false, knew of incidents of serious illnesses and deaths in dogs and cats, and knew that their omissions rendered their statements false or misleading.

70. Further, Defendants failed to exercise reasonable care in ascertaining the accuracy of the information regarding the safe use of Defendants' Product, and failed to disclose that Defendants' Product caused possible death in dogs and cats, among other serious adverse effects. Defendants also failed to exercise reasonable care in communicating the information concerning Defendants' Product to Plaintiff SIMS, and/or concealed facts that were known to Defendants.

71. Plaintiff SIMS was not aware of the falsity of the foregoing representations, nor was Plaintiff SIMS aware that one or more material facts concerning the safety of Defendants' Product had been concealed or omitted.

15

72.    In reliance upon Defendants' misrepresentations (and the absence of disclosure of the serious health risks), Plaintiff SIMS fed Defendants' Product to their dog, ABBY. Had Plaintiff SIMS known the true facts concerning the risks associated with Defendants' Product, he would not have purchased the Product nor fed the Product to the family pet.

73.    The reliance by Plaintiff SIMS upon Defendants' misrepresentations was justified because said misrepresentations and omissions were made by individuals and entities that were in a position to know the facts concerning Defendants' Product.

74.    Plaintiff SIMS was not in a position to know the facts because Defendants aggressively promoted the use of Defendants' Product and concealed the risks associated with its use, thereby inducing Plaintiff SIMS to purchase Defendants' Product.

75.    As a direct and proximate result of Defendants' misrepresentations, and/or concealment, Plaintiffs suffered damages as previously alleged herein.

76.    Defendants' conduct in concealing material facts and making the foregoing misrepresentations, as alleged herein, was committed with conscious or reckless disregard of the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

77.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

16



## AS AND FOR A FOURTH CAUSE OF ACTION, SOUNDING IN IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE AND IMPLIED WARRANTY OF MERCHANTABILITY

78.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

79.    Defendants manufactured, marketed, sold, and distributed Defendants' Product.

80.    At the time Defendants marketed, sold, and distributed Defendants' Product for use by Plaintiff SIMS, Defendants knew of the purpose for which Defendants' Product was intended and impliedly warranted Defendants' Product to be of merchantable quality and safe and fit for such use.

81.    Plaintiff SIMS reasonably relied on the skill, superior knowledge, and judgment of Defendants as to whether Defendants' Product was of merchantable quality and safe and fit for its intended use.

82.    Due to Defendants' wrongful conduct as alleged herein, Plaintiff SIMS could not have known about the risks and side effects associated with Defendants' Product until after ingestion by Plaintiff SIMS' dog, ABBY.

83.    Contrary to such implied warranty, Defendants' Product was not of merchantable quality and was not safe or fit for its intended use.

84.    As a direct and proximate result of Defendants' breach of implied warranty, Plaintiff SIMS suffered damages as previously alleged herein.

85.    Defendants' aforementioned conduct was committed with knowing, conscious, and deliberate disregard for the rights and safety of consumers such as Plaintiff, thereby entitling Plaintiff to punitive damages in an amount to be determined at

17

trial that is appropriate to punish Defendants and deter them from similar conduct in the future.

86.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A FIFTH CAUSE OF ACTION
### SOUNDING IN BREACH OF EXPRESS WARRANTY

87.    Plaintiff repeats and incorporates herein by reference the allegations made in the above Paragraphs.

88.    Defendants expressly warranted that the Product was safe and well accepted by dogs and cats and was safe for long-term use.

89.    The Product does not conform to these express representations because the Product is not safe and has high levels of serious, life-threatening side effects.

90.    As a direct and proximate result of the breach of said warranties, Plaintiff was damaged, and he is therefore entitled to damages as described herein.

91.    The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

## AS AND FOR A SIXTH CAUSE OF ACTION
### SOUNDING IN NEGLIGENCE

92.    Plaintiff repeats and incorporates by reference each and every paragraph of this complaint as though set forth in full in this cause of action.

93.    Defendants owed a duty to consumers of Defendants' Product, including the Plaintiff, to use reasonable care in designing, testing, labeling, manufacturing,

18

marketing, supplying, distribution and selling Defendants' Product, including a duty to
ensure that Defendants' Product did not cause the dogs and cats ingesting the Product
to suffer from unreasonable, unknown, and/or dangerous side effects.

94.   Defendants failed to exercise reasonable care in warning about,
designing, testing, labeling, manufacture, marketing, selling and/or distributing of
Defendants' Product and breached their duties to Plaintiff in that, and not by way of
limitation, they did not warn of the known risks associated with the ingestion of
Defendants' Product and did not exercise an acceptable standard of care, i.e., what a
reasonably prudent manufacturer or seller would have known and warned about.

95.   Moreover, the product lacked sufficient warnings of the hazards and
dangers to users of said Product, and failed to provide safeguards to prevent the
injuries sustained by Plaintiff's dog, ABBY.   Defendants failed to properly test
Defendants' Product prior to its sale, and as a result subjected users to an
unreasonable risk of injury when this Product was used as directed and recommended.

96.   Defendants additionally breached their duty and were negligent in their
actions, misrepresentations, and omissions toward Plaintiff, in part, in the following
ways:

> a.   Failed to exercise due care in designing, developing, and
> manufacturing Defendants' Product so as to avoid the aforementioned
> risks to individuals using these products;
>
> b.   Failed to include adequate warnings with Defendants' Product that
> would alert Plaintiff SIMS and other purchasers to its potential risks and
> serious side effects;

19

c.    Failed to adequately and properly test Defendants' Product before placing it on the market;

d.    Failed to conduct sufficient testing on Defendants' Product, which if properly performed, would have shown that Defendants' Product had serious side effects, including, but not limited to, death of the dog or cat;

e.    Failed to adequately warn Plaintiff that use of Defendants' Product carried a risk of other serious side effects;

f.    Failed to provide adequate post-marketing warnings or instructions after Defendants knew, or should have known, of the significant risks of ingestion by dogs and cats of Defendants' Product;

g.    Placed an unsafe product into the stream of commerce; and

h.    Was otherwise careless or negligent.

97.    Defendants knew, or should have known, that Defendants' Product caused unreasonably dangerous risks and serious side effects of which Plaintiff would not be aware. Defendants nevertheless advertised, marketed, sold and/or distributed Defendants' Product knowing of its unreasonable risks of injury.

98.    Defendants knew or should have known that consumers' dogs or cats, such as Plaintiff SIMS' dog, ABBY, would suffer injury and possible death as a result of Defendants' failure to exercise reasonable care as described above.

99.    Upon information and belief, Defendants knew or should have known of the defective nature of Defendants' Product, as set forth herein, but continued to design, manufacture, market, and sell Defendants' Product so as to maximize sales and profits

at the expense of the health and safety of the public, including Plaintiff, in conscious and/or negligent disregard of the foreseeable harm caused by Defendants' Product.

100.   Defendants failed to disclose to the Plaintiff and the general public facts known or available to them, as alleged herein, in order to ensure continued and increased sales of Defendants' Product. This failure to disclose deprived Plaintiff SIMS of the information necessary for them to weigh the true risks of purchasing Defendants' Product against the benefits.

101.   As a direct and proximate result of Plaintiff SIMS' feeding Defendants' Product to their dog, ABBY, Plaintiff SIMS' dog, ABBY, suffered serious health problems and ultimate death.

102.   By virtue of Defendants' negligence, Defendants directly, foreseeably and proximately caused Plaintiff SIMS' dog, ABBY, to suffer serious health problems and ultimate death. As a result, the imposition of punitive damages against Defendants is warranted.

103.   The damages resulting from the allegations asserted under this cause of action, exceed the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005.

**WHEREFORE**, Plaintiff demands judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, the class of putative plaintiffs pray for relief, in an amount which exceeds the district court's original jurisdictional limits as described in Section 4 of the Class Action Fairness Act of 2005, as follows:

a.  Awarding damages including but not limited to the money expended on Defendants' defective Product, veterinary bills associated with the treatment, testing, and diagnosis resulted from ingestion of the defective Product, disposal fees after death of the pet and the pecuniary value of the pet;

b.  Awarding punitive damages to Plaintiffs;

c.  Awarding pre-judgment and post-judgment interest to Plaintiffs,

d.  Awarding the costs and expenses of this litigation to Plaintiffs,

e.  Awarding reasonable attorneys' fees and costs to Plaintiffs as provided by law; and

f.  For such further relief as this Court deems necessary, just, and proper.

**WHEREFORE**, Plaintiffs demand judgment against Defendants in an amount to be determined upon the trial of this action, together with the costs and disbursements of this action.

22

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all issues so triable in this civil action.

Dated:  March 21, 2007.

CHARLES RAY SIMS and PAMELA SIMS,
Plaintiffs

LUNDY & DAVIS, L.L.P.
300 N. College Ave., Suite 309
Fayetteville, AR 72701
(479) 527-3921
(479) 587-9196 (fax)
jhatfield@lundydavis.com

By: _____
Jason M. Hatfield
Ark. Bar No. 97143

Attorneys for Plaintiffs

23

Western District of Arkansas - Docket Report

# U. S. District Court
## Western District of Arkansas (Fayetteville)
## CIVIL DOCKET FOR CASE #: 5:07-cv-05055-RTD

Widen et al v. Menu Foods et al
Assigned to: Robert T. Dawson
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/23/2007
Jury Demand: Plaintiff
Nature of Suit: 385 Prop. Damage Prod. Liability
Jurisdiction: Diversity

### Plaintiff
**Richard Scott Widen**
*individually and all other persons similarly situated*

represented by **Jeremy Young Hutchinson**
Patton, Roberts, McWilliams & Capshaw
111 Center Street, Suite 1315
Little Rock, AR 72201
US
501-372-3480
Fax: 501-372-3488
Email: jhutchinson@pattonroberts.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

### Plaintiff
**Barbara Widen**
*individually and all other persons similarly situated*

represented by **Jeremy Young Hutchinson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant
**Menu Foods**

### Defendant
**Menu Foods Income Fund**

### Defendant
**Menu Foods Gen Par Limited**

### Defendant
**Menu Foods Limited Partnership**

### Defendant
**Menu Foods Operating Partnership**

### Defendant
**Menu Foods Midwest Corporation**

### Defendant

Western District of Arkansas - Docket Report

**Menu Foods South Dakota**

**Defendant**

**Menu Foods, Inc.**

**Defendant**

**Menu Foods Holdings, Inc.**

**Defendant**

**Wal-Mart Stores, Inc.**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/23/2007 | 1 | COMPLAINT against Menu Foods Operating Partnership, Menu Foods Midwest Corporation, Menu Foods South Dakota, Menu Foods, Inc., Menu Foods Holdings, Inc., Wal-Mart Stores, Inc., Menu Foods, Menu Foods Income Fund, Menu Foods Gen Par Limited, Menu Foods Limited Partnership ( Filing fee $ 350 receipt number 5000051.), filed by Richard Scott Widen, Barbara Widen.(ct) (Entered: 03/23/2007) |
| 03/23/2007 | | Summons Issued as to Menu Foods Operating Partnership, Menu Foods Midwest Corporation, Menu Foods South Dakota, Menu Foods, Inc., Menu Foods Holdings, Inc., Wal-Mart Stores, Inc., Menu Foods, Menu Foods Income Fund, Menu Foods Gen Par Limited, Menu Foods Limited Partnership and returned to attorney/plaintiff for service (ct) (Entered: 03/23/2007) |
| 03/23/2007 | 2 | Remark copy of complaint and docket sheet sent to MDL (ct) (Entered: 03/23/2007) |
| 03/26/2007 | | CLERK'S NOTICE re Multiple Attorneys Listed on Pleading directed to Plaintiffs Richard Scott Widen, Barbara Widen. Complaint, 1 lists multiple attorneys, Jeremy Hutchinson, Jack Patterson, Richard Adams, James Wyly and Sean Rommel, appearing for the filer. All listed attorneys, other than the attorney signing the pleading, must enter a separate Notice of Appearance in order to receive electronic notification of future activity in the case. TEXT ONLY ENTRY, NO DOCUMENT ATTACHED (ct) (Entered: 03/26/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/27/2007 15:17:13 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 5:07-cv-05055-RTD |
| Billable Pages: | 1 | Cost: | 0.08 |

124

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FAYETTEVILLE DIVISION

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 3 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

RICHARD SCOTT AND BARBARA )
WIDEN, individually and )
All others Persons Similarly Situated, )    Case No. 0 7-5055
)
       Plaintiffs )
)
       v. )
)
MENU FOODS; MENU FOODS )
INCOME FUND; MENU FOODS )
GEN PAR LIMITED; MENU FOODS )
LIMITED PARTNERSHIP; MENU )
FOODS OPERATING PARTNERSHIP; )
MENU FOODS MIDWEST CORP; )
MENU FOODS SOUTH DAKOTA; )
MENU FOODS, INC.; MENU FOODS )
HOLDINGS, INC.; WAL-MART )
STORES, INC )

       Defendants

## CLASS ACTION COMPLAINT

Plaintiffs Scott and Barbara Widen through their undersigned counsel, on behalf of

themselves and all others similarly situated, upon both personal knowledge and information and

belief, alleges as follows:

1.      This class action is brought against Defendants for negligently contaminating the

pet food supply making the food unfit for animal consumption and harmful and for purposefully

failing to warn consumers of the contaminated pet food. As a result of Defendant's actions,

Plaintiff and other similarly situated pet owners have been damaged.

## PARTIES

2.      Plaintiffs Richard and Barbara Widen are a married couple and residents

125

of Benton County, Arkansas. Plaintiffs lost two cats due to the contaminated food produced, distributed, marketed, and sold by the Defendants.

    3.    Defendant, Menu Foods Income Fund (Menu Foods) is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas and has availed themselves of the protections of the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Ark. Code Ann. 16-4-101 and service may be effected through the Hague convention on service abroad of judicial and extrajudicial documents and civil or commercial matters at 8 Falconer Drive, Streetsville, ON, Canada L5N 1B1.

    Menu Foods Midwest Corp. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington DE. Defendant, Menu Foods Holding, Inc., is a Delaware corporation and may be served through it registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington Delaware. Menu Foods operates two manufacturing plants in the United States and distributes their pet food products throughout the entire United States including Arkansas.

    Defendant, Menu Foods, Inc. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey. Upon information and belief, Defendants Menu Food Midwest Corp., Menu Foods South Dakota Inc., Menu Foods, Inc., and Menu Foods Holdings, Inc., are wholly owned subsidiaries of Menu Foods Income Fund, a business registered in and headquartered in Ontario, Canada. The above listed Defendants are hereinafter referred to collectively as "Defendants" or "Menu Foods"

126

4.      Defendant Wal-Mart Stores, Inc, (Wal-Mart) is a Delaware corporation headquartered in Bentonville, Arkansas that sells Menu Food products throughout their retail stores in Arkansas and throughout the United States.  Wal-Mart is the single largest distributor of Menu Foods products. Plaintiffs purchased the contaminated pet food at the Wal-Mart store in Bentonville, AR.  Menu Foods produced some brands of pet food exclusively for Wal-Mart under a private label agreement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(d)(2).  The matter in controversy exceeds $5,000,000, is a class action and there are members of the proposed Class that are citizens of States different than at least one of the Defendants.

6.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (d).   Defendant Wal-Mart is headquartered in the District. Defendant Menu Foods Income Fund is a foreign corporation headquartered outside the United States and distributes, through retailers such as Wal-Mart, the pet food products in issue in the District.  Additionally, Plaintiffs purchased the tainted pet food in the District.

## FACTS

7.      Defendant, Menu Foods told the U. S. Food and Drug Administration, that they had become aware of the contamination on February 20, 2007.  Menu Foods believed that the contamination came from their supplier of Wheat Gluten.  Defendant, Menu Foods conducted test to determine if the contamination was harmful to pets on February 27, 2007. The results of the test resulted in death to one out of every six pets who consumed the contaminated pet food.



8.    Defendants Menu Foods and Wal-Mart did nothing to prevent the distribution of the contaminated pet food until weeks after the discovery occurred. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in Arkansas and throughout the country.

9.    Plaintiffs owned two cats that were very healthy middle aged cats. The two cats were named "Fred" and "Grinch." Plaintiffs fed the two cats "Special Kitty" cat food which was made by Menu Foods exclusively for Wal-Mart under a private label agreement.

10.    Beginning around February, 2007, Plaintiffs noticed that both cats were acting differently and had begun to lose weight. In a tragic irony, Plaintiff forced the cats to eat more of the contaminated pet food, unaware that the pet food was contaminated and the cause of the poor health.

11.    On March 18, 2007, Plaintiff was finally made aware through the media that a recall had been issued for the pet food by the Defendant, Menu Foods and that the pet food could cause kidney failure and other symptoms that were being experienced by the Plaintiffs' cats. On March 19, 2007, Plaintiffs took their cats to their veterinarian for examination. That same day, the veterinarian ran some tests and informed the Plaintiffs that both cats were suffering from kidney failure due to the consumption of the contaminated pet food. The veterinarian suggested that the only chance of survival for the cats was a very expensive procedure in which the likelihood of success was very small.

12.    The veterinarian diagnosed the kidney failure to be the result of the cats consumption of contaminated pet food. The veterinarian recommended that the Plaintiffs call a Menu Foods hotline number which she provided to the Plaintiffs. The hotline had been set up on or around March 17, 2007, nearly three weeks after Menu Foods had become aware of the problem. The veterinarian suggested that Menu Foods should pay for the expensive procedure.

13.    The Plaintiffs called the hotline number around a hundred times to determine if Menu Foods would pay for the procedure and never reached an operator or answering machine. Finally, out of desperation the Plaintiffs called another number for Menu Foods and left a message for somebody from Menu Foods to call them. The message was never returned.

14.    Around 3:30 p.m. on the afternoon of March 19, 2007, Plaintiffs made the decision that their cats could not suffer any further and euthanized the cats.

## CLASS ACTION ALLEGATIONS

15.    Plaintiffs brings all claims as class claims pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the Class defined below.

16.    Plaintiffs bring their claims on their own behalf, and on behalf of the following Class:

> All persons in the United States who purchased contaminated pet food from Wal-Mart that was produced by Menu Foods.

17.    The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class, upon information and belief, includes millions of members.

18.    Questions of law or fact common to the Class exist as to Plaintiff and all Class Members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law or fact are the following:

a.      Whether Defendants were negligent in allowing pet food products in the United States to be contaminated with a dangerous ingredient that was not safe for consumption.

b.      Whether Defendants owed a duty to pet owners by ensuring that the pet food was not contaminated with dangerous ingredients;

c.      Whether Defendants' conduct amounted to breach of such a duty;

d.      Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class Members' damages;

e.      Whether Defendants are responsible for the contamination of the pet food;

f.      Whether Defendants were negligent per se;

g.      Whether Defendants are strictly liable;

h.      Whether Defendants breached their warranty of merchantability.

i.      Whether Defendants produced, marketed, distributed, and sold a defective product

j.      Whether Defendants failed to adequately warn consumers of contaminated pet food.

k.      Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

l.      Whether Plaintiff and the Class Members are entitled to damages, and, if so, the proper amount of such damages; and

m.      Whether Defendants purposefully failed to adequately warn consumers of contaminated food supply for economic benefit.

## COUNT I

### Negligence

19.    Plaintiff incorporates by reference all of the allegations contained above.

20.    Defendants owed a duty to Plaintiff to ensure that the pet food was not contaminated with dangerous and harmful ingredients.

130

21.    Defendants breached that duty by allowing the contamination of the pet food supply with a dangerous and harmful ingredient during the approximate time of time January 2007 to March, 2007.

22.    Defendants' actions proximately caused damage to Plaintiff and the Class.

23.    Plaintiff and the Class have suffered damages by a loss of property, cost of medical bills, and cost of purchasing new, uncontaminated pet food.

## COUNT II

### Negligence Per Se

24.    Plaintiff incorporates by reference all of the allegations contained above.

25.    Defendants' acts and/or omissions as described herein constitute negligence per se.

26.    Defendants had a duty to ensure that their pet food was produced, transported, marketed, distributed, and sold in a manner consistent with governmental regulations.

27.    Defendants breached this duty in violation of regulatory standards.

28.    Such breaches directly and proximately caused damages to the Plaintiff and the Class.

29.    Plaintiff and the Class have suffered damages due to Defendants failure to conform to the United States Food and Drug Administration regulations.

## COUNT III

### Strict Liability- Defective in Design or Manufacture

30.    Plaintiff incorporates by reference all of the allegations contained above.

31.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption and in violation of the Defendants Warranty of Merchantability owed to Plaintiff.

32.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

33.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

34.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## COUNT IV

### Strict Product Liability - Failure to Warn

35.    Plaintiff incorporates by reference all of the allegations contained above.

36.    Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption.

37.    Defendant failed to warn Plaintiff or Class Members of the dangers on the Defendants' labels or through other means of advertising until after enormous damage had been suffered by the Plaintiffs and the Class Members.

38.    Even after Defendant became aware of the dangerous contamination of its pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food and suffer great harm.

39.    As a result of Defendants' actions, Plaintiff and the Class Members have suffered significant damages.

40.    Exercise of reasonable care by the Plaintiffs and the Class members could not have eliminated the dangerous product or prevented the related injuries.

41.    Plaintiff and the Class Members have been damaged enormously, and they seek injunctive relief from further contamination, compensatory damages, punitive damages for reckless and willful conduct, attorney fees and costs, and all other proper and just relief.

## JURY TRIAL DEMANDED

42.    Plaintiff demands a jury of twelve.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, request that he and the other Class Members have judgment entered in their favor and against Defendants, as follows:

A.    An order certifying that this action, involving Plaintiff's and the Class Members' separate and distinct claims, be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and their undersigned counsel to represent the Class;

B.    An award, for Plaintiff's and each Class Members' separate and distinct claims, of compensatory damages and pre- and post-judgment interest thereon;

C.    An award for Plaintiff's and the Class Members of punitive damages for reckless and wanton conduct;

      D.    Injunctive relief to prevent further contamination of the American

pet food supply; and

      E.    All other appropriate and just relief.

DATED: March 23, 2007        **PATTON, ROBERTS, MCWILLIAMS
&amp; CAPSHAW, L.L.P.**

Jeremy Y. Hutchinson

Jeremy Y. Hutchinson
Jack Thomas Patterson II
Stephens Building
111 Center St., Suite 1315
Little Rock, AR 72201
Phone: (501) 372-3480
Fax: (501) 372-3488

Richard Adams
James C. Wyly
Sean F. Rommel
**PATTON, ROBERTS, MCWILLIAMS
&amp; CAPSHAW, L.L.P.**
Century Bank Plaza, Suite 400
P.O. Box 6128
Texarkana, Texas 75505-6128
Phone: (903) 334-7000
Fax: (903) 334-7007

**ATTORNEYS FOR PLAINTIFF**

**U.S. District Court**

**District of New Jersey [LIVE] (Camden)**

**CIVIL DOCKET FOR CASE #: 1:07-cv-01338-NLH-AMD**

WORKMAN et al v. MENU FOODS LIMITED et al
Assigned to: Judge Noel L. Hillman
Referred to: Magistrate Judge Ann Marie Donio
Cause: 28:1332 Diversity-Product Liability

Date Filed: 03/23/2007
Jury Demand: Plaintiff
Nature of Suit: 365 Personal Inj. Prod.
Liability
Jurisdiction: Diversity

**Plaintiff**

**JARED WORKMAN**

represented by **DONNA SIEGEL MOFFA**
TRUJILLO, RODRIGUEZ &
RICHARDS, LLP
8 KINGS HIGHWAY WEST
HADDONFIELD, NJ 08033
(856) 795-9002
Email: donna@trrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MARK COHEN**

represented by **DONNA SIEGEL MOFFA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**MONA COHEN**
*on behalf of themselves and all others
similarly situated*

represented by **DONNA SIEGEL MOFFA**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MENU FOODS LIMITED**

**Defendant**

**MENU FOODS INC.**

**Defendant**

**MENU FOODS MIDWEST
CORPORATION**

| Date Filed | # | Docket Text |
|---|---|---|
| 03/23/2007 | 1 | COMPLAINT against MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. (Filing fee $350 |

35

| | | |
|---|---|---|
| | | receipt number 1403626.) JURY DEMAND, filed by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Civil Cover Sheet)(sk) (Entered: 03/23/2007) |
| 03/23/2007 | 2 | Summons Issued as to MENU FOODS MIDWEST CORPORATION, MENU FOODS LIMITED, MENU FOODS INC. Days Due - 20. (sk) (Entered: 03/23/2007) |
| 03/27/2007 | 3 | MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention by JARED WORKMAN, MARK COHEN, MONA COHEN. (Attachments: # 1 Memorandum of Law in Support of Plaintiffs' Motion to Authorize Service of P rocess of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention# 2 Text of Proposed Order)(MOFFA, DONNA) (Entered: 03/27/2007) |
| 03/28/2007 | | Setting Deadlines as to 3 MOTION to Authorize Service of Process of Plaintiffs' Class Action Complaint on Menu Foods Limited in Accordance with the Hague Convention. Motion Returnable for 4/20/2007 before Magistrate Judge Ann Marie Donio. PLEASE BE ADVISED THIS MOTION WILL BE DECIDED ON THE PAPERS UNLESS OTHERWISE NOTIFIED BY THE COURT. (db, ) (Entered: 03/28/2007) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/28/2007 13:31:46 | | | |
| PACER Login: | mw0078 | Client Code: | 060228-00001/91103 |
| Description: | Docket Report | Search Criteria: | 1:07-cv-01338-NLH-AMD Start date: 1/1/1970 End date: 3/28/2007 |
| Billable Pages: | 1 | Cost: | 0.08 |

TRUJILLO RODRIGUEZ & RICHARDS, LLC
Donna Siegel Moffa, Esquire
Lisa J. Rodriguez, Esquire
8 Kings Highway West
Haddonfield, NJ 08033
TEL: (856)795-9002
FAX: (856)795-9887

BERGER & MONTAGUE, P.C.
Sherrie R. Savett, Esquire
Michael T. Fantini, Esquire
Russell D. Paul, Esquire
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

Attorneys for Plaintiffs and the Class

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| Jared Workman, and Mark and Mona Cohen, on behalf of themselves and all others similarly situated, | : : : : | Civil Action No. _____ |
| Plaintiffs, | : : | |
| vs. | : : | |
| Menu Foods Limited, Menu Foods Inc., and Menu Foods Midwest Corporation | : : : | COMPLAINT - CLASS ACTION JURY TRIAL DEMANDED |
| Defendants, | : | |

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Jared Workman, and Mark and Mona Cohen, by their attorneys, allege upon

information and belief, the following:

1.     This class action is brought, and these proceedings instituted, to redress the harms

resulting from the manufacture, production, and sale by Menu Foods Limited, Menu Foods Inc.

and Menu Foods Midwest Corporation of dog and cat food marketed under over 90 brand names.

Plaintiffs make the following allegations, except as to the allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based upon the investigation undertaken by Plaintiffs' counsel, which included, inter alia, review and analysis of Defendant's website, press releases, news articles, and pleadings filed in other suits.

## PRELIMINARY STATEMENT

2.      Defendants manufacture and sell over 90 brands of pet food for cats and dogs, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. On March 16, 2007, the parent company of Menu Foods Limited issued a press release announcing the recall of 60 million cans of contaminated dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Foods Limited's U.S. manufacturing facilities - Menu Foods, Inc. and Menu Foods Midwest Corporation, located in New Jersey and Kansas, respectively.

3.      The recalled pet food that Plaintiffs and Class members purchased and fed to their pets caused their pets to become ill through kidney disease, requiring veterinarians visits, medications, hospitalizations and, in some cases, burials of those pets that died due to renal failure caused by the contaminated pet food. Many pets that consumed the recalled tainted food now require ongoing monitoring of their health to ascertain the extent of the damage to their kidneys.

4.      Plaintiffs here seek damages, injunctive relief, attorneys' fees, and costs against Defendants.

2

**PARTIES**

5.    Plaintiff Jared Workman resides at 1150 Unit D, Monroe Drive, Boulder, CO, 80303. Plaintiff Workman purchased and fed his cat Iams pet food that was manufactured by Defendants during the Class Period. This cat, named Seth, became ill with kidney disease, was hospitalized, and subsequently died of acute renal failure. In addition to the cost of purchasing the contaminated food, Plaintiff Workman incurred economic costs in connection with the medical treatment and burial of his cat, as well as continuous medical monitoring of his other two cats.

6.    Plaintiffs Mark and Mona Cohen reside at 1415 Brighton Street, Philadelphia, PA 19111.   Plaintiffs purchased and fed their dog Iams pet food that was manufactured by Defendants during the Class Period. This dog, named Cookie, subsequently developed symptoms of acute renal failure. In addition to the cost of purchasing the contaminated food, the Cohens incurred economic costs in connection with the medical treatment and damage to personal property caused by their dog's illness.

7.    Defendant Menu Foods Limited is a Canadian corporation located at 8 Falconer Dr., Mississauga, ON , L5N 1B1. Menu Foods Limited has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit.

8.    Defendant Menu Foods Inc. is a New Jersey corporation, with its headquarters at 9130 Griffith Mogan Lane, Pennsauken, NJ 08110.  Menu Foods Inc. has done business throughout the United States and in the State of New Jersey at all times relevant to this lawsuit. Menu Foods Inc. is a wholly-owned subsidiary of  Menu Foods Limited and manufactures pet food for distribution in the United States.

3

9.    Defendant Menu Foods Midwest Corporation is a Delaware corporation, with its

headquarters at PO Box 1046, 1400 East Logan Ave., Emporia, KS 66801. Menu Foods

Midwest Corporation has done business throughout the United States and in the State of New

Jersey at all times relevant to this lawsuit. Menu Foods Midwest Corporation is a wholly-owned

subsidiary of Menu Foods Limited and manufactures pet food for distribution in the United

States.

10.    The events complained of occurred throughout the United States and in the State

of New Jersey.

### JURISDICTION AND VENUE

11.    This Court has original jurisdiction over this class action under 28 U.S.C.

§1332(d)(2), (d) (5)(B), (d) (6) because (i) there are 100 or more class members, (ii) there is an

aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs, and (iii)

there is minimal diversity because at least one plaintiff and one defendant are citizens of

different states.

12.    Venue in this Court is proper in that Defendants transacted business in this county

and the conduct complained of occurred in this district, as well as elsewhere in New Jersey.

### STATEMENT OF FACTS

13.    Defendant Menu Foods Limited purports to be the leading North American private

label/contract manufacturer of wet pet food products sold by supermarket retailers, mass

merchandisers, pet specialty retailers, and other retail and wholesale outlets. In 2006, Menu Foods

Limited produced more than one billion containers of pet food.

14.    Defendant Menu Foods Limited is the parent company of, and wholly-owns, both

4

Defendant Menu Foods, Inc. ("MFI"), located in Pennsauken, New Jersey, and Defendant Menu Foods Midwest Corporation ("MFMC"), located in Emporia, Kansas. MFI and MFMC are two of Menu Food Limited's manufacturing facilities in the United States.

15.    At least from December 3, 2006 through March 6, 2007, Defendants failed to adhere to proper safety standards and failed to ensure that the pet food they manufactured and sold was free from contamination. More specifically, on March 16, 2007, the parent company of Menu Foods Limited issued a press release whereby it announced the recall of a portion of the dog and cat food manufactured between December 3, 2006 and March 6, 2007. The recall covers the "cuts and gravy" style pet foods in cans and pouches manufactured at two of Menu Food Limited's facilities - MFI located in Pennsauken, New Jersey and MFMC in Emporia, Kansas.

16.    Reportedly, 60 million cans and pouches of the pet food were recalled.

17.    The recalled pet food was sold under more than 90 brand names, including popular labels like Iams and Eukanuba and private label brands sold at large retail chains. A list of all brand names that were recalled is contained on the Company's website and is attached hereto as Addendum A. Retailers who sold the contaminated products include Ahold USA, Kroger Co., Safeway, Wal-Mart, Pet Smart, and Pet Value, among others.

18.    Menu Foods Limited acknowledges receiving complaints in the United States which raised concern about pet food manufactured since early December 2006, and its impact on the renal health of the pets consuming the products. The Company has discovered that timing of the production associated with these complaints coincides with the introduction of an ingredient from a new supplier.

19.    Stephen Sundlof, the Food and Drug Administration's (FDA) chief veterinarian,

5

141

said that Menu Foods began its own taste tests of its pet food beginning February 27, 2007 in approximately 40 to 50 pets. Within a few days, animals began showing signs of sickness. In early March 2007, 7 animals died. Menu Foods announced its recall weeks later, on March 16, 2007.

20.    The FDA has reported that it received numerous calls and complaints from owners of sick and deceased pets, who flooded phone lines at State FDA offices, as well as calls from veterinarians and pet food companies. See Los Angeles Times, March 20, 2007.

21.    To date, there are 15 confirmed death. The FDA expects the death toll to rise.

22.    The FDA said that the investigation is focused on problems with wheat gluten, which Menu Foods Limited said had been coming from a new supplier. Wheat gluten is a source of protein and was used to thicken the gravy in the pet food.

23.    Plaintiff Jared Workman owned a cat named Seth. During December 2006, Plaintiff Workman fed his cat Iams pet food, as well as other brand name cat foods which are now listed on the Company's recall list as contaminated products.

24.    In December 2006, Plaintiff Workman noticed that his cat, Seth, was acting strangely. He was lethargic and eating less than usual. Plaintiff called his cat veterinarian, who came to the house to perform blood work. The vet reported that Seth was dying of kidney failure. Plaintiff Workman then took Seth to an animal hospital in Greeley, Colorado. After several days in the hospital, it became clear that Seth was most likely suffering from acute renal failure. After about one week in the hospital, and despite constant medical treatment, Seth died.

25.    In addition to Plaintiff Workman suffering emotional distress from the loss of his cat, he spent approximately $2,500 in veterinarian bills and burial costs, which was not covered

6

by insurance. In addition, Plaintiff Workman spend almost $300 to have his other two cats tested, and will incur additional costs to have them continually monitored. In addition to these costs, Plaintiff Workman has not received any refunds for the cost of the contaminated pet food that he initially purchased. Finally, he estimates that it will cost him approximately $1,000 to purchase a new cat.

26.     Plaintiffs Mark and Mona Cohen own an 11 month old dog named Cookie that is a Yorkie-Bijain mix. Beginning January 2007, the Cohens' dog Cookie became violently ill with severe vomiting. The Cohens had been feeding Cookie Iams dog food.

27.     In January and February 2007, Cookie's condition worsened and Cookie developed symptoms of kidney disease, including vomiting, lethargy, excessive thirst, loss of appetite and dehydration. The Cohens took Cookie to the veterinarian on four separate occasions, including a midnight visit on February 9, 2007 to a veterinarian emergency room which required an x-ray at an additional cost of $300.

28.     Although the Cohens' suspected that the Iams food might be involved in Cookie's condition, they were assured by their salesperson at PetSmart that this was unequivocally not the case and that Cookie should not be switched to a different dog food. The Cohens, however, insisted a switch be made, and purchased, at the recommendation of their PetSmart salesperson, a dog food under the brand name Nutro. Both Iams and Nutro were manufactured and recalled by Defendants.

29.     Cookie is currently on an anti-nausea medication called Reglin and requires additional vetrinarian visits and monitoring of her kidney functions.

30.     In addition to suffering emotional distress, the Cohens have incurred the costs of

7

medical bills not covered by their pet insurance, prescription medication bills, damage to their personal property including rugs and carpets caused by their's pet's illness, and the costs of future medical monitoring of their dog.

31.   As a result of Defendants' wrongful actions, Plaintiffs and Class members have sick or deceased pets, and have suffered economic damages, including, but not limited to, the costs of the recalled pet food, the costs of medical treatment for their pets, burial costs, the costs to replace their pets, and the costs to replace or clean personal property damaged as a result of their pets' illnesses.

32.   In addition, their pets will require continuous medical monitoring to gauge the long-term effects of the contaminated pet food on their kidney functions and overall health. Therefore, because the precise impact on the health of class members' pets is not currently known, Plaintiffs and the Class seek the cost of medical monitoring for their pets.

### CLASS ACTION ALLEGATIONS

33.   Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated.

34.   The class which Plaintiffs seek to represent are composed of all persons in the United States who purchased any of the pet food brands manufactured by Defendants during the period commencing December 3, 2006, and ending March 6, 2007 (the "Class Period") that were recalled by Defendants.

35.   The class is composed of thousands, and possibly millions, of persons, the joinder of whom is not practicable. The disposition of their claims in a class action will benefit both the parties and the Court. Defendants have recalled 60 million cans of pet food that it sold

8

throughout the United States during the Class Period, and thus the Class is sufficiently numerous

to make joinder impracticable, if not impossible.

36.    There are questions of fact and law which are common to all members of the

class, including, inter alia, the following:

> 1.    Whether Defendants breached any express or implied warranties when
> they manufactured and sold the recalled pet food;
>
> 2.    Whether Defendants' negligently manufactured and sold the recalled
> pet food; and
>
> 3.    Whether the Class has been damaged, and if so, the appropriate measure
> of damages including the nature of the equitable relief to which the class
> is entitled.

37.    The above common issues of fact and law predominate over any arguable

individualized issues.

38.    Plaintiffs' claims are typical of the claims of the other members of the class

because Plaintiffs' and all of the Class members' damages arise from and were caused by having

purchased and fed the recalled pet food to their pets. As a result, the evidence and the legal

theories regarding Defendants' alleged wrongful conduct are identical for Plaintiffs and all of the

Class members.

39.    Plaintiffs will fairly and adequately protect the interests of the members of the

Class, and Plaintiffs have no interests which are contrary to or in conflict with those of the Class

they seek to represent. Plaintiffs have retained competent counsel experienced in class action

litigation to further ensure such protection and to prosecute this action vigorously.

40.    The prosecution of separate actions by individual members of the class would

create a risk of inconsistent or varying adjudications with respect to individual members of the

class, which would establish incompatible standards of conduct for the party opposing the class and would lead to repetitious trials of the numerous common questions of facts and law. Plaintiffs do not believe that any difficulty will be encountered in the management of this litigation that would preclude its maintenance as a class action. Plaintiffs believe and therefore aver that claims are small in relation to the costs of an individual suit, and a class action is the only proceeding pursuant to which Class members can, as a practical matter, recover. As a result a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

41.    Proper and sufficient notice of this action may be provided to the Class members through notice published in appropriate publications.

42.    Plaintiffs and the members of the Class have suffered irreparable harm and damages as a result of the Defendants' wrongful conduct as alleged herein. Absent representative action, Plaintiffs and the members of the Class will continue to suffer losses, thereby allowing these violations of law to proceed without remedy.

**COUNT I - BREACH OF EXPRESS WARRANTY**

43.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

44.    Defendants expressly warranted that the recalled brands of pet food were, in fact, ingestible food that was safe for consumption by dogs and cats.

45.    In addition, Defendants made numerous express warranties about the quality of its food and its manufacturing facilities. For example, Menu Foods touts the claim that it "manufacture[s] the private-label wet pet-food industry's most comprehensive product program

10

with the highest standards of quality" and it operates "state-of-the-art" manufacturing facilities in the United States and Canada.

46.    Members of the Class were induced by Defendants' labeling, advertising and marketing the recalled brands of pet food as "food" to rely upon said express warranty, and did so rely in purchasing the recalled brands of pet food and feeding them to their pets.

47.    In reliance on Defendants' untrue warranties, Plaintiffs and the Class purchased the recalled pet food and fed that food to their pets.

48.    Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT II - BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

49.    Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

50.    Defendants are merchants pursuant to sections 2-104 and 2-314 of the Uniform Commercial Code with respect to pet foods.

51.    Through Defendants' marketing, labeling, and sales, Defendants impliedly warranted that the recalled pet food, which was sold to Plaintiffs and Class members and fed to their pets, was fit for the ordinary purpose for which it was intended, namely, to safely feed and nourish pets without any resulting negative health effects, pursuant to section 2-314 of the Uniform Commercial Code.

11

52.   Through Defendants' marketing, labeling, and sales, Defendants knew that Plaintiffs and Class members would purchase the recalled pet food at issue for the ordinary purpose of feeding their pets.

53.   Defendants manufactured, labeled, advertised, sold, and distributed the recalled pet foods at issue for the ordinary purpose for which it was purchased by Plaintiffs.

54.   Plaintiffs and Class members purchased and used the recalled pet foods for the ordinary purposes for which such goods are sold, namely feeding them to their pets.

55.   Plaintiffs and Class members relied upon Defendants' representations and claims in purchasing the recalled pet foods.

56.   The recalled pet foods purchased by Plaintiffs and Class members were unfit for their ordinary purpose when sold. In fact, such pet foods were contaminated and caused severe illness and/or death of the pets that consumed them. Therefore, Defendants breached the implied warranty of merchantability in the sale of the recalled pet foods at issue.

57.   Plaintiffs and members of the Class sustained damages as a proximate result of said breach of warranty.

## COUNT III - NEGLIGENCE

58.   Plaintiffs incorporate by reference the preceding paragraphs as if they were fully set forth herein.

59.   Defendants owed a duty to pet owners who purchased its products to ensure that their pet food was safe for pets to consume and free from contamination, such that no pets consuming these products would be injured or die as a result of such consumption.

60.   Defendants breached said duty as described herein above when they failed to

12

adhere to proper safety standards and failed to properly ensure the safety of their products when they sold contaminated pet food, proximately causing damage to Plaintiffs and members of the Class.

61.    As a proximate result of the Defendants' conduct described herein, Plaintiffs and members of the Class have suffered damages as a result and continue to suffer damages as a result.

## JURY DEMAND

Plaintiffs hereby request a trial by jury on all issues triable by right before a jury.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment as follows:

1.    That this Court certify this action as a Class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), and appoint Plaintiffs and their counsel to represent the Class;

2.    That this Court enter judgment and award damages in favor of Plaintiffs and the Class, and against Defendants under the theories alleged herein;

3.    That this Court establish a fund for the medical monitoring of Plaintiffs' pets to discover and treat the extent of kidney damage these pets have suffered as a result of consuming Defendants' recalled pet food;

4.    That this Court award Plaintiffs all attorneys' fees, expenses and costs of this suit;

5.    That this Court award Plaintiffs pre-judgment and post-judgment interest at the maximum rate allowable by law, compounded daily; and

13

6.    That this Court grant such other, further, and different relief that the Court deems

necessary, just, and proper.

Dated: March 22, 2007                     Respectfully submitted,

                                          TRUJILLO RODRIGUEZ & RICHARDS, LLC


                                          By  /s Donna Siegel Moffa
                                                 Donna Siegel Moffa, Esquire
                                                 Lisa J. Rodriguez, Esquire
                                                 8 Kings Highway West
                                                 Haddonfield, NJ  08033
                                                 TEL:  (856)795-9002
                                                 FAX: (856)795-9887


                                          BERGER & MONTAGUE, P.C.
                                          Sherrie R. Savett, Esquire
                                          Michael T. Fantini, Esquire
                                          Russell D. Paul, Esquire
                                          1622 Locust Street
                                          Philadelphia, PA 19103
                                          (215) 875-3000

                                          ROVNER, ALLEN, ROVNER ZIMMERMAN &
                                          NASH
                                          Robert A. Rovner, Esquire
                                          Jeffrey I. Zimmerman, Esquire
                                          175 Bustleton Pike
                                          Feasterville, PA 19053-6456
                                          (215) 698-1800

                                          Attorneys for Plaintiffs and the Class

Schedule A

Recalled Menu Foods' Pet Food Brands[1]

---

[1]    http://www.menufoods.com/recall/product_cat.html, accessed March 21, 2007; http://www.menufoods.com/recall/product_dog.html, accessed March 21, 2007.

15



# MENU FOODS INCOME FUND

**Home**

**Recall Information**

Press Release

Cat Product Information

Dog Product Information

## Recalled Dog Product Information
### Recall Information 1-866-895-2708

1. Americas Choice, Preferred Pets
2. Authority
3. Award
4. Best Choice
5. Big Bet
6. Big Red
7. Bloom
8. Cadillac
9. Companion
10. Demoulas Market Basket
11. Eukanuba
12. Food Lion
13. Giant Companion
14. Great Choice
15. Hannaford
16. Hill Country Fare
17. Hy-Vee
18. Iams
19. Laura Lynn
20. Loving Meals
21. Metlers Main Choice
22. Mighty Dog Pouch
23. Mixables
24. Nutriplan
25. Nutro Max
26. Nutro Natural Choice
27. Nutro Ultra
28. Nutro
29. Ol'Roy Canada
30. Ol'Roy US
31. Paws
32. Pet Essentials
33. Pet Pride - Good n Meaty
34. Presidents Choice
35. Price Chopper
36. Priority Canada
37. Priority US

Menu Foo
8 Falcone
Streetsvill
Canada Li



Menu Foods Income Fund - Annual General Meeting

38. Publix
39. Roche Brothers
40. Save-A-Lot
41. Schnucks
42. Shep Dog
43. Springfield Prize
44. Sprout
45. Stater Brothers
46. Stop & Shop Companion
47. Tops Companion
48. Wegmans Bruiser
49. Weis Total Pet
50. Western Family US
51. White Rose
52. Winn Dixie
53. Your Pet

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.





# MENU FOODS INCOME FUND

Home
**Recall Information**
Press Release
Cat Product Information
Dog Product Information

Menu Foo
8 Falcone
Streetsvill
Canada L!

## Recalled Cat Product Information
### Recall Information 1-866-895-2708

1. Americas Choice, Preferred Pets
2. Authority
3. Best Choice
4. Companion
5. Compliments
6. Demoulas Market Basket
7. Eukanuba
8. Fine Feline Cat
9. Food Lion
10. Foodtown
11. Giant Companion
12. Hannaford
13. Hill Country Fare
14. Hy-Vee
15. Iams
16. Laura Lynn
17. Li'l Red
18. Loving Meals
19. Meijer's Main Choice
20. Nutriplan
21. Nutro Max Gourmet Classics
22. Nutro Natural Choice
23. Paws
24. Pet Pride
25. Presidents Choice
26. Price Chopper
27. Priority US
28. Save-A-Lot
29. Schnucks
30. Science Diet Feline Savory Cuts Cans
31. Sophistacat
32. Special Kitty Canada
33. Special Kitty US
34. Springfield Prize
35. Sprout
36. Stop & Shop Companion
37. Tops Companion

154

Menu Foods Income Fund - Annual General Meeting

38.  Wegmans
39.  Weis Total Pet
40.  Western Family US
41.  White Rose
42.  Winn Dixie

© Copyright 2006, Menu Foods Income Fund, All Rights Reserved.
Best viewed using Internet Explorer.

